FRANK O. LOWDEN et al., Trustees, Appellees, v. IOWA STATE COMMERCE COMMISSION et al., Appellants; BROTHERHOOD OF RAILROAD TRAINMEN et al., Interveners, Appellants.

No. 45002.

NOVEMBER 19, 1940.

J. G. Gamble, R. L. Read, and A. B. Howland, for appellees.

Harold E. Davidson, Commerce Counsel, and R. C. Davis

and Albert G. Roberts, Assistant Commerce Counsel, for appellants.

Milton W. Strickler, for interveners, appellants.

MILLER, J.—This cause concerns a complaint, entered by the Train Service Legislative Association of Iowa, alleging that the Chicago, Rock Island and Pacific Railway Company is operating trains between East Des Moines and Gowrie and between Gowrie and Sibley with a lesser number of trainmen than is consistent for the safety of the employees and the public, and asking that the Iowa State Commerce Commission. make an order requiring the use of an additional brakeman.

The original complaint was filed by the Brotherhood of Railroad Trainmen on November 19, 1932. Hearing was had thereon and, on February 23, 1933, relief was denied. On October 14, 1937, a supplemental complaint was filed, asking for a rehearing and for an order requiring the use of the additional brakeman. The rehearing was granted, a hearing was had, evidence was taken, and, on April 1, 1938, the Commission ordered the railroad to provide an additional brakeman between East Des Moines and Gowrie.

Appellees, as trustees for the railroad, commenced an action in the district court of Polk county, pursuant to section 7887 of the Code, 1935, to secure the vacation of the order, asserting that the order is illegal, unreasonable, inequitable, and unjust. The Commission admitted the allegations of the petition, except those which challenged the validity of the order, denied the latter, and prayed that the petition be dismissed, that the order be affirmed and that judgment be entered, pursuant to section 7889 of the Code, 1935, for costs and attorney fees.

At the trial, the record made before the Commission was introduced in evidence. From it the court determined that the order of the Commission is unreasonable, inequitable and unjust. Judgment was entered vacating the order, from which the Commission appeals.

The principal contentions of the parties, particularly appellants, relate to the extent of the jurisdiction of the court. To

pass upon such contentions it is necessary to consider some rather fundamental features of the statutes applicable herein.

Sections 7874 to 7877, inclusive, of the Code, 1935, confer upon the Commission broad powers of supervision over railroads. Sections 7883 to 7887, inclusive, provide the necessary procedure to enforce or vacate an order made by it.

Sections 7883 and 7884, providing for enforcement of an order through equitable proceedings, were originally enacted as chapter 133 of the Acts of the Twentieth General Assembly. Considering the original statute and amendments thereto with the provisions as now codified, it is clear that the court is warranted in enforcing an order of the Commission only if it find that it "is reasonable and just, and that in refusing compliance therewith said railway company is neglecting and omitting the performance of any public duty or obligation * * *." [§7884, C.,'35]

Section 7887, which provides for vacating an order on application of the railroad, was originally enacted as chapter 129 of the Acts of the Thirty-third General Assembly. Considering such statute as originally enacted with amendments thereto, it is clear that the court is empowered to vacate any order, "If found by the court, after due trial, not to be reasonable, equitable, or just * * *." [§7887, C., '35] This conclusion is the only logical conclusion to be drawn when we consider that the opposite finding is necessary to warrant enforcement of the order.

In the case of State v. Mason City & Ft. D. Ry. Co., 85 Iowa 516, 524, 52 N. W. 490, 493, we state: "The order of the board, as a result of its investigation, is not the judgment or conclusion that binds the parties. It is merely by the law made the basis of an action wherein the rights of the parties are investigated and determined by the prescribed rules of judicial inquiry." When proceedings are had to enforce or vacate the order, the judicial inquiry by the court is whether the order is reasonable, equitable and just. Cases wherein this court determined that an order of the Commission was unreasonable, inequitable or unjust and accordingly denied enforcement of the same include the following: State v. Des Moines & Ft. D. Ry. Co., 84 Iowa 419, 51 N. W. 38; Smith v. Chicago, M. & St. P. Ry. Co., 86 Iowa 202, 53 N. W. 128; State v. Chicago, M. & St. P. Ry. Co., 86 Iowa 304, 53 N. W. 253;

State v. Des Moines & K. C. Ry. Co., 87 Iowa 644, 54 N. W. 461.

In the case of State v. Des Moines & Ft. D. Ry. Co., supra, we state (page 429 of 84 Iowa, page 41 of 51 N. W.) as follows:

"If, upon the facts thus found by the commissioners, they had refused the application for an order to rebuild the line of road, because to so order would have been unreasonable or unjust, the law would not permit the court to question the correctness of such finding of fact, nor to disturb the order based thereon. But the law would permit the court to, in effect, refuse an order to rebuild by refusing to enforce it, if in its judgment the order was unreasonable or unjust; and hence to enforce such an order by a decree of the court, the court and the commissioners should concur in a finding of such facts * * *."

Again (page 431 of 84 Iowa, page 42 of 51 N. W.) we state:

"The law in terms makes this proceeding an equitable one, and the reasonableness or justness of an order based on such a state of facts is to be determined from equitable considerations. If the order is enforced, it is, as to its legal bearings, the equivalent of a decree for specific performance of a contract or obligation, and equity does not lend its aid to enforce such a performance where the party seeking enforcement is not injured or prejudiced by the neglect. It is under such circumstances that specific performance becomes oppressive, and is in the proper exercise of a discretionary power refused by the courts."

In the case of State v. Chicago, M. & St. P. Ry. Co., supra, in refusing to enforce an order requiring installation of an overhead crossing, we state (page 309 of 86 Iowa, page 254 of 53 N. W.) as follows:

"Of course, all railroad crossings at grade are dangerous. Some are more dangerous than others, owing to obstructions to a view of approaching trains by reason of cuts, trees, or other obstacles; but there is no competent evidence in this case showing that there is more danger at this crossing than at any other situated at the end of a cut. We do not determine that there may not be cases where an overhead crossing may properly be required, but, in view of the fact that grade crossings are the

rule in this state, it would require a much stronger case than is here presented to warrant this court in holding that such an order 'is reasonable and just.' To authorize such a finding, there should be some certainty in the evidence instead of random statements, founded upon the mere opinions of witnesses that the open crossing is very dangerous. In our opinion, there is nothing so unusual or extraordinarily dangerous in this crossing as to require the defendant to construct and maintain a bridge which the evidence shows must span a cut fifty-seven feet wide, and be replaced, if built of wood, every ten years, by reason of the natural decay of the material of which it is built.''

In the case of Smith v. Chicago, M. & St. P. Ry. Co., supra, in refusing to enforce an order requiring construction of a connection between two railroads, we state (86 Iowa 202, 210, 53 N. W. 128, 130) as follows:

''The commissioners found that there was no commercial necessity for it, and we are justified by the language of their decision in concluding that in their opinion the connection should not be ordered if not required by the statute. It is not the policy of the law, however, to require the connection in question, and if we may rely upon the showing made by the record, it would be oppressive and unjust.''

In the case of State v. Des Moines & K. C. Ry. Co., supra, we state (87 Iowa 644, 647, 54 N. W. 461, 462) as follows:

''The income of the road did not warrant the maintenance of expensive stations, but demanded the strictest economy. It was thought by the management that, by establishing two stations at points nearer the junction of the other roads named, the defendant would be able to control more traffic, by being nearer to the inhabitants residing in the vicinity of Osceola and Van Wert. It appears to us that the owners of the road should not be interfered with in the management of their property, including the location of their stations, where, as in this case, there is no competent evidence that any patron of the road has been deprived of reasonable facilities for transacting business with the defendant.''

The record, that is the basis for an action in court, is stated

in the case of State v. Chicago, M. & St. P. Ry. Co., 86 Iowa 641, 652, 53 N. W. 323, 326, as follows:

"While technical precision should not be required in proceedings before the board of commissioners, yet, in view of the provisions of the statute, and their manifest intent, it is necessary that the record before the board should show upon what complaint, or state of facts, they were called upon or proceeded to exercise the power with which they are vested; and it is upon such complaint or state of facts that the district court must act. In other words, it is the case, as made before the commissioners, that the court is to pass upon, and determine whether the order made is reasonable * * *."

The complaint herein made to appellants merely asserted that appellees operate their trains between East Des Moines and Gowrie with a lesser number of trainmen than is consistent with considerations of public safety. Pursuant to such complaint the Commission undertook to fix the number of the train crew for such trains. Appellees' refusal to comply with such order would have to be "neglecting and omitting the performance of any [a] public duty or obligation" to warrant enforcement of the order pursuant to section 7884 of the Code, 1935. We are unable to find any neglect of such public duty or obligation that would require enforcement of this order.

The testimony in the record, from which the Commission undertakes to determine that, in the operation of appellees' trains between East Des Moines and Gowrie, the use of an additional brakeman is desirable, was chiefly opinions and conclusions, based upon contingencies which apparently have not arisen, because the record is undisputed that at no time has there been an accident on this run which resulted in either damage to property or injury to any person.

In the case of State v. Chicago, M. & St. P. Ry. Co., supra (86 Iowa 304, 53 N. W. 253), we recognized that there must of necessity be some element of danger in connection with the operation of a railroad and refused to enforce an order that was based solely upon opinions that a particular crossing was dangerous. We held that there must be some certainty in the evidence. In State v. Des Moines & Ft. D. Ry. Co., supra (84 Iowa 419,

51 N. W. 38), we held that, in determining whether an order of the Commission is reasonable and just, the court will determine the question from equitable considerations and that it will not lend its aid where the party seeking enforcement is not injured or prejudiced by the alleged neglect. In Smith v. Chicago, M. & St. P. Ry. Co., supra (86 Iowa 202, 53 N. W. 128), we recognized that the duty of the railroad ordinarily must be one that is imposed by statute. In State v. Des Moines & K. C. Ry. Co., supra (87 Iowa 644, 54 N. W. 461), we held that the owners of the railroad will not be interfered with in the management of their property if there is no competent evidence of any patron being deprived of reasonable facilities.

In view of the foregoing decisions, and the principles therein applied, we hold that the court properly determined that the order of the Commission is unreasonable, inequitable and unjust. The court is given express power and authority to determine whether appellants' order is ''reasonable, equitable or just'', before the order can be enforced. If the court does not so find, it has the authority and the duty to vacate the order. The trial court determined that the order of the Commission is unreasonable, inequitable and unjust. There is abundant support for such finding. The order was properly vacated.

The judgment is affirmed.—Affirmed.

SAGER, BLISS, HALE, and HAMILTON, JJ., concur.

RICHARDS, C. J., and STIGER, J., dissent.

STIGER, J. (dissenting)—I do not agree with the majority opinion which holds that, under the facts and circumstances of this case, it was triable de novo in the lower court under the provisions of section 7887, 1935 Code. The opinion fails to consider other legal propositions urged by appellants in the court below and on appeal.

Complaints filed by the Legislative Board of the Brotherhood of Railroad Trainmen stated the trains were undermanned, causing an unsafe condition for the public as well as the employees. The railway company filed an answer to the applications denying the operation of the trains by a crew of four men was dangerous either to the public or the employees and alleging

that the commission was without jurisdiction to hear and consider the subject matter of the complaints.

On April 1, 1938, the Commission rendered its decision finding that it had jurisdiction to determine whether or not the trains were operated in a manner that would promote the security and convenience of the public and that the evidence presented by the applicants established their contention that the security and convenience of the public required an additional trainman.

Appellants' assignment of error is that the district court erred in not limiting its jurisdiction to the question of the Iowa Commerce Commission's jurisdiction and the legality of the Commission's order. In support of this assignment, appellants submit three propositions of law which I will consider in the order presented.

I. The first proposition is that the Iowa Commerce Commission is empowered and has jurisdiction to hear and determine matters affecting the safety of the public as to the manner of operation of trains. I agree with this proposition.

Section 7874, 1935 Code, gives the Commission general supervision of all railroads in the state. Section 7875 imposes on the Commission the duty to inspect the condition of each railroad and the manner of its operation and management with regard to the public safety and convenience in the state. Section 7877 provides when in the judgment of the Commerce Commission a change in the mode of operating a railroad is reasonable and expedient in order to promote the security, convenience, and accommodation of the public, the Commission may make an order prescribing the change it finds necessary.

The right of the state under its police power to regulate public utilities, to delegate to an administrative commission the administration of regulations and rules and the power to supervise and regulate utilities within its authority and make administrative orders, is too well established to require discussion.

"It is thoroughly established that a state may, either by direct legislative action or through an administrative commission, compel a railroad or other common carrier doing business under a public franchise to furnish services and facilities reasonably adequate to satisfy the public needs, and, to the extent neces-

sary for the protection of the public interest, may regulate the manner in which such services are rendered.'' 9 Am. Jur. 484, section 82.

.  Under sections 7874 and 7877 the Commission had jurisdiction to determine whether the security and convenience of the public reasonably required an additional brakeman.  For cases considering the jurisdiction of the Commission, see State v. Mason City & Ft. D. Ry. Co., 85 Iowa 516, 52 N. W. 490; State v. Chicago, M. & St. P. Ry. Co., 152 Iowa 317, 130 N. W. 802; Campbell v. Eldridge, 206 Iowa 224, 220 N. W. 304; In re Appeal of Beasley Bros., 206 Iowa 229, 220 N. W. 306; In re Application of Waterloo, C. F. & N. R. Co., 206 Iowa 238, 220 N. W. 310.

Plaintiffs assert the jurisdiction of the Commission is limited to enforcement of regulations imposed by the legislature, and that, if the above statutes are construed to give the Commission power to legislate new laws by promulgating rules and regulations, then the statutes are in violation of Article III, section 1, of the Constitution of the State of Iowa because the legislature may not delegate its purely legislative power, citing Goodlove v. Logan, 217 Iowa 98, 251 N. W. 39, and State v. Van Trump, 224 Iowa 504, 275 N. W. 569, which hold that the legislature cannot delegate to a commission authority which is strictly and exclusively legislative, that is, as stated in the Goodlove case, the Commission cannot say whether there shall be a law or what the law shall be.

The cited cases, the question of departmental encroachment in violation of Article III, section 1, which divides the power of the government into three separate departments, and the question of delegation of legislative power are thoroughly discussed in the recent case of Miller v. Schuster, 227 Iowa 1005, 289 N. W. 702.  In the instant case the Commission did not exercise ''purely legislative power'' and the order did not have the force and effect of a law.  Its administrative order was regulatory, made under its delegated police power and pursuant to its supervisory power over railroads, and was effective only against the plaintiffs.

II.  Appellants' second and third propositions will be con-

sidered together. They are as follows: (2) In determining the necessity of having an additional brakeman as affecting the safety of the public, the commission was in the exercise. of a legislative function. (3) The district court is prohibited from exercising or performing legislative functions and, therefore, cannot hear and determine this matter de novo or on its merits.

Section 7887, 1935 Code, reads:

"7887. Proceedings to vacate order. Any railroad aggrieved at any rule, order, or regulation made by the board may institute proceedings in any court of proper jurisdiction to have the same vacated. If found by the court, after due trial, not to be reasonable, equitable, or just, and if upon an appeal from any rule, order, or regulation of the board the complaining railroad is successful in having such rule, order, or regulation vacated, the aforesaid penalty shall be set aside."

If possible we should construe the act as valid and constitutional. The order which plaintiffs seek to vacate was an exercise of the police powers of the Commission, tended to promote the convenience and security of the public, and was legislative in character. If section 7887 required a trial de novo on the review of such an order it would be unconstitutional. My construction of the statute is that in reviewing such an order the authority of the district court is limited to questions of law. It cannot substitute its judgment of the merits of the case for the judgment of the Commission. The language of the act justifies this interpretation which makes it constitutional. The following authorities sustain this construction:

In Missouri Pac. Ry. Co. v. Omaha, 235 U. S. 121, 127, 35 S. Ct. 82, 83, 59 L. Ed. 157, 160, it is stated:

"That a railway company may be required by the State, or by a duly authorized municipality acting under its authority, to construct overhead crossings or viaducts at its own expense, and that the consequent cost to the company as a matter of law is *damnum absque injuria,* or deemed to be compensated by the public benefit which the company is supposed to share, is well settled by prior adjudications of this court. [Citing cases.]

"This is done in the exercise of the police power, and the means to be employed to promote the public safety are primarily in the judgment of the legislative branch of the government, to whose authority such matters are committed, and so long as the means have a substantial relation to the purpose to be accomplished, and there is no arbitrary interference with private rights, the courts cannot interfere with the exercise of the power by enjoining regulations made in the interest of public safety which the legislature has duly enacted."

In Denny v. Des Moines County, 143 Iowa 466, 121 N. W. 1066, we held there cannot be an appeal from the finding of the board of supervisors that a proposed drainage district was not for the public benefit or conducive to the public health, convenience or welfare, for the reason that such question was legislative, not judicial, in character.

In Christensen v. Agan, 209 Iowa 1315, 1319, 230 N. W. 800, 803, the court states that:

"If the action of the board [supervisors] amounted to a finding only that the new district would not be 'for the public benefit or utility, or conducive to the public health, convenience, or welfare,' the courts cannot interfere therewith. Such action on the part of the board is legislative in character, as distinguished from judicial. Denny v. Des Moines County, 143 Iowa 466; In re Nishnabotna R. Imp. Dist., 145 Iowa 130; Vinton v. Board of Supervisors (196 Iowa 329), supra."

In City of Des Moines v. Manhattan Oil Co., 193 Iowa 1096, 1104, 184 N. W. 823, 827, 23 A. L. R. 1322, 1329, the opinion states:

"The power to designate the subject of police regulation rests in the state alone; and if a given statute is not clearly repugnant to some constitutional guaranty, the courts are without power to interfere. Such interference, if tolerated at all, must be on the theory that the subject of the regulation is not within the legislative jurisdiction; or, if the subject be one within such jurisdiction, it must appear to the court that, looking through mere forms, and at the substance of the matter, it can say that the statute, enacted professedly in the

interest of the public or general welfare, 'has no substantial relation to that object, but is a clear, unmistakable infringement of rights secured by the fundamental law.' ''

Section 5105-a2, 1935 Code, vests supervisory powers in the Commission over motor carriers. Section 5105-a7 provides that the Commission must make a finding that service proposed to be rendered by the carrier will promote the public convenience and necessity before issuing a certificate.

Section 5105-a17 reads:

''5105-a17. Testimony receivable. It shall consider the application and any objections filed thereto and may hear testimony to aid it in determining the propriety of granting the application.''

Section 5105-a21 provides for an appeal from the decision of the Commission to the district court.

Section 5105-a23 reads:

''5105-a23. Trial on appeal. The appeal shall be submitted upon the transcript of the evidence and the record made before the commission and the district court shall either affirm or reverse the order of the commission.''

The extent of the power of the courts under these statutes in reviewing orders of the Commission was considered in In re Appeal of Beasley Bros., 206 Iowa 229, 220 N. W. 306; In re Application of Waterloo, C. F. & N. R. Co., 206 Iowa 238, 220 N. W. 310; Campbell v. Eldridge, 206 Iowa 224, 220 N. W. 304, which held that if the order of the commission is legislative in character the authority of courts on review is limited to questions of law.

In re Appeal of Beasley Bros., supra, after referring to the constitutional division of the government of Iowa into separate departments, states, at page 235 of 206 Iowa, page 309 of 220 N. W.:

''As a prerequisite to granting a certificate to a motor bus carrier, the board must find that the proposed service will promote the public convenience and necessity. This required determination, on its face, is not of existing facts and resultant and

controverted rights and duties, which is a judicial function, but is of public convenience and necessity, requiring the formation and determination of future rights and duties, which is a legislative question. [Citing cases.]

"The power to make such determination may not be conferred upon or assumed by a constitutional court."

"The judicial review, in a proceeding to set aside an order or regulation of the commission, should extend no further than is necessary to keep the commission within the law and protect the constitutional rights of the parties. The order will not be set aside unless positive illegality or invalidity appears, and then only to the extent of such unlawfulness." 51 C. J. 82, section 148.

In In re Application of Waterloo C. F. & N. R. Co., 206 Iowa 238, 242, 220 N. W. 310, 312, the opinion states:

"The trial court was of the opinion that the appeal brought up all questions of fact, as well as of law, for review. The reversal of the district court was put upon the ground that the evidence failed to disclose that the public convenience and necessity required additional facilities of transportation. The question here involved has arisen in several outside jurisdictions. With rare exception, the holding in such cases has been that the review intended was of questions of law only: such as, Did the commission act without or in excess of its jurisdiction? Is the order complained of without any support in the evidence? Was the action wholly arbitrary and unreasonable? * * *

"If the finding and order of the commission was legal in all particulars, then it must be affirmed. If there were infirmities of jurisdiction or procedure, or other illegality, then it should be reversed." See Campbell v. Eldridge, 206 Iowa 224, 220 N. W. 304.

The above cases are applicable to the instant case. The judgment of the Commission that an additional trainman was reasonably necessary to promote the safety and convenience of the public was a legislative determination and the authority of the district court on review was limited to questions of law.

III. The jurisdiction of the trial court was limited to a determination of the legality of the order and if there was evi-

dence to support the order it was the duty of the lower court to affirm it. The order complained of was unquestionably supported by the evidence. Railroad rules and regulations were introduced in evidence. Appellants' witnesses were experienced railroad men, conductors, firemen and brakemen. They gave the reasons for their conclusions that an additional brakeman was necessary for the safe operation of the trains and to enable them to comply with the railroad rules promulgated for the purpose of promoting safe operation of the trains. I will quote a few of the conclusions of the witnesses:

"I would say it is impossible with a conductor and one brakeman operating this mixed train to operate it without violating Rules 93, 94 and 99."

"I am familiar with those rules and it is not possible in my opinion as a railroad man with 17 years experience to operate this mixed train with the present crew and comply with Rules 99 and 717."

"I am an engineer as well as fireman. I find difficulty in receiving signals with only one brakeman. From the safety factor, I think it would be a big feature [extra brakeman]. That would be safety for the public."

I am satisfied that the order was not arbitrary and is not without support in the evidence. Though the district court, if the proceeding were triable de novo, might have reached a different conclusion, it was without jurisdiction to substitute its judgment for the judgment of the Commission.

None of the cited cases in the majority opinion construed section 7887 or similar sections providing proceedings for vacation of orders of the Commission, nor do they, with the exception of State v. Chicago, M. & St. P. Ry. Co., 86 Iowa 304, 53 N. W. 253, consider orders of the Commission for the promotion of the public safety made in the exercise of the police powers of the Commission. The case of State v. Chicago, M. &. St. P. Ry. Co., supra, was an action in equity to enforce an order of the Commissioners requiring defendant to build a bridge over its railroad track at such a height that trains on the railroad might pass under the bridge. The court states on page 309 of 86 Iowa, page 254 of 53 N. W.: " * * * but there is no competent evidence in

540

this case showing that there is more danger at this crossing than at any other situated at the end of a cut.'' This decision is in harmony with the views expressed in this dissenting opinion. I would reverse.

RICHARDS, C. J., joins in this dissent.