BURLINGTON TRANSPORTATION COMPANY, Appellee, v. IOWA STATE COMMERCE COMMISSION et al., Appellants; ROCK ISLAND MOTOR TRANSIT COMPANY, Intervener-appellant.

No. 45626.

June 17, 1941.

Rehearing Denied September 26, 1941.

Harry E. Boe, J. G. Gamble, and A. B. Howland, for intervener-appellant.

Harold E. Davidson, for appellants.

Russell B. James, J. C. Pryor, and John Hale, for appellee.

Miller, J.—The record herein includes a certified transcript of proceedings before the Iowa State Commerce Commission pursuant to which the commission, on May 14, 1940, granted to the Rock Island Motor Transit Company certificates of convenience and necessity to operate as a motor carrier of freight over two routes, one from Des Moines through Oskaloosa and Ottumwa to Eldon and the other from Eldon through Fairfield, Washington and Muscatine to Davenport.

The Burlington Transportation Company objected to the granting of such certificates of convenience and necessity, participated in a hearing before the commission and, being aggrieved by the decision, appealed to the district court. In seeking reversal of such decision, it asserted a number of propositions, among them the following: the record shows on its face that, in making its decision, the commission exceeded its powers by considering facts and information outside the record made at the hearing and evidence which was improperly admitted over the objections of the Burlington Transportation Company, as a result of which such company was deprived of its constitutional and statutory rights to a fair public hearing on the issues to be

decided, in violation of section 9, Article I and section 1, Article III of the Constitution of Iowa and the 14th Amendment to the Constitution of the United States; there was no substantial evidence that the granting of the certificate would promote the public convenience and necessity but instead the evidence showed conclusively that existing transportation agencies, including the Burlington Transportation Company, were furnishing adequate facilities and service; the applicant failed to make satisfactory showing of financial ability; the commission did not make proper and adequate findings of fact; the decision is arbitrary and capricious, not based upon lawfully admitted evidence and is wholly void.

The court determined that, in making a finding that proposed service will promote the public convenience and necessity, the commission acts as a quasi-judicial body and, in the exercise of such judicial powers, must be governed by the same rules applicable to the exercise of any judicial power; in a hearing of this nature the commission must consider only the evidence that reaches it through the lawful channels of the hearing; its consideration of any evidence or information secured from any other sources is contrary to law; since the record shows that the decision and order of the commission is based, at least partly, on evidence which it could not lawfully consider, the order cannot be sustained. The court also determined that the record shows that the commission undertook to exercise equitable jurisdiction which it does not possess. The order of the commission was, therefore, reversed. The commission and the Rock Island Motor Transit Company, intervener, appeal to this court.

 In its decision and judgment, the court refers to the decisions of this court in the cases of In re Appeal of Beasley Bros., 206 Iowa 229, 220 N. W. 306; In re Application of W., C. F. & N. Ry. Co., 206 Iowa 238, 220 N. W. 310; Campbell v. Eldridge, 206 Iowa 224, 220 N. W. 304. All three of those cases involved appeals to the district court from orders and decisions of the state board of railroad commissioners (now State Commerce Commission), on applications for certificates of public convenience and necessity. We do not think that the court correctly interpreted these decisions. The court's holding

that, in determining whether proposed service will promote the public convenience and necessity, the commission acts in a judicial capacity and must follow strictly the rules applicable to a judicial inquiry, is directly opposed to our holding in the Beasley case wherein we state (206 Iowa 229, at page 235, 220 N. W. 306, at page 309) as follows:

"As a prerequisite to granting a certificate to a motor bus carrier, the board must find that the proposed service will promote the public convenience and necessity. This required determination, on its face, is not of existing facts and resultant and controverted rights and duties, which is a judicial function, but is of public convenience and necessity, requiring the formation and determination of future rights and duties, which is a legislative question. State ex rel. White v. Barker, 116 Iowa 96; Denny v. Des Moines County, 143 Iowa 466, 473 et seq.; Hutchins v. City of Des Moines, 176 Iowa 189; Focht v. Board of Supervisors of Fremont County, 145 Iowa 130; Thompson v. Board of Supervisors, 201 Iowa 1099; Keller v. Potomac Elec. P. Co., 261 U. S. 428; Janvrin, Petitioner, 174 Mass. 514 (55 N. E. 381); City Council v. Eastern Mass. St. R. Co., 254 Mass. 42 (149 N. E. 671); City of Duluth v. Railroad & Warehouse Com., 167 Minn. 311 (209 N. W. 10); Tenny v. Seattle Elec. Co., 48 Wash. 150 (92 Pac. 895); Rolf v. Town of Hancock, 167 Minn. 187 (208 N. W. 757); Tyson v. Washington County, 78 Neb. 211 (110 N. W. 634)."

Again, at page 238 of 206 Iowa, page 310 of 220 N. W., we state:

"As has been remarked, the commission, in taking its action, is not restricted to the evidence produced before it. Its action may be determined by matters upon which complainants have had no opportunity to be heard. Compare Boston & A. R. Co. v. New York Cent. R. Co., 256 Mass. 600 (153 N. E. 19)."

For us to affirm the decision of the trial court herein, would require us to overrule the foregoing pronouncements of this court. We see no occasion for so doing.

The statutes involved herein are contained in Chapter 252.1 of the Code, 1939. Section 5100.06 makes it unlawful for

any motor carrier to operate within this state without first having obtained from the commission a certificate declaring that public convenience and necessity require such operation. Section 5100.07 provides, ''Before a certificate shall be issued, the commission shall, after a public hearing, make a finding that the service proposed to be rendered will promote the public convenience and necessity. If such finding be made, it shall be its duty to issue a certificate.'' Section 5100.13 provides, ''Upon the filing of the application, the commission shall fix a date for hearing thereon and cause a notice addressed to the citizens of each county through or in which the proposed service will be rendered, to be published in some newspaper of general circulation in each county, once each week for two consecutive weeks.'' Section 5100.15 provides, ''Any person, firm, corporation, city, town, or county whose rights or interests may be affected shall have the right to make written objections to the proposed application.'' Section 5100.16 provides, ''All such objections shall be on file with the commission at least five days before the date fixed for said hearing. The commission may permit objections to be filed later, in which event the applicant shall be given reasonable time to meet such objections.'' Section 5100.17 provides, ''It shall consider the application and any objections filed thereto and may hear testimony to aid it in determining the propriety of granting the application.''

The effect of the decision of the trial court herein is to construe section 5100.17 so that the clause, ''*may* hear testimony *to aid it in* determining the propriety of granting the application,'' means that the commission *must* hear testimony, *as in open court,* and, in making its decision, is bound by the rules applicable to a *judicial* inquiry. We cannot so construe the statute.

The argument of appellee asserts that the constitution requires us to so interpret the statute. There is no merit in the contention. The rules of constitutional law, applicable to notice and hearing on legislative acts, are illustrated in drastic fashion by the case of Commonwealth v. Sisson, 189 Mass. 247, 251, 75 N. E. 619, 621, 1 L. R. A., N. S., 752, 755, 109 Am. St. Rep. 630, wherein, in holding that the operator of a sawmill was subject

to a regulation of the fish and game commissioners which prohibited the discharge of sawdust into a stream, the court states:

"We are of opinion in the first place that it is within the power of the Legislature to protect and preserve edible fish· in the rivers and brooks of the Commonwealth, and for that purpose, if they think proper, to forbid any sawdust being discharged into any brook containing such fish. The right to run a sawmill on the bank of a brook or a river is, like all rights of property, subject to be regulated by the Legislature when the unrestrained exercise of it conflicts with other rights public or private. See Commonwealth v. Alger, 7 Cush. 53, 54; Rideout v. Knox, 148 Mass. 368, 2 L. R. A. 81, 12 Am. St. Rep. 560, 19 N. E. 390. * * *

"We are of opinion, in the second place that in case the Legislature thought that in regulating the conflicting rights of individuals to run sawmills on the banks of a river on the one hand, and of the public on the other hand to have fish live and increase in the same stream, it was not worth while to forbid sawdust being discharged into every stream in which there were edible fish, they could leave to a board having peculiar knowledge on the subject the selection of the brooks and rivers in which the fish were of sufficient value to warrant the prohibition or regulation of the discharge of sawdust. * * * The result is that in our opinion the action of the board in the case at bar was the working out of details under a legislative act. The board is no more required to act on sworn evidence than is the Legislature itself, and no more than in case of the Legislature itself is it bound to act only after a hearing or to give a hearing to the plaintiff when he asks for one; and its action is final, as is the action of the Legislature in enacting a statute. And being legislative, it is plain that the questions of fact passed upon by the commissioners in adopting the provisions enacted by them cannot be tried over by the court. * * *

"The practical result is that the defendants are forbidden to conduct their sawmill as they had conducted it for thirty years, by a board who have not heard evidence and have refused the defendants a hearing; that the action of the board is final, and that no compensation is due to them. * * *

"The delegation of such legislative powers to a board is going a great way. But the remedy is by application to the Legislature if a remedy should be given. In our opinion it is within its constitutional power, and the court can give no remedy."

In the case of Thayer Amusement Corp. v. Moulton, R. I., 7 A. 2d 682, 689, 124 A. L. R. 236, 245, the court states:

"Having found that the licenses which the petitioner in the instant case was seeking are privileges which may be granted or refused in the discretion of the bureau, its refusal to grant the petitioner's request for a hearing is of no importance. A goodly number of the authorities above cited, and many others that could be cited, hold that, under such circumstances, a hearing is not requisite to the validity of an administrative board's decision. It is because the action of the bureau on such applications was not in its nature judicial but rather administrative that no hearing was required."

The Iowa statutes do not require us to go to the lengths required by the Massachusetts and Rhode Island statutes above referred to, since they provide for notice, a public hearing and the introduction of evidence. The appellee herein was afforded full opportunity to introduce evidence in support of its objection. However, the appellee was not entitled to have the hearing circumscribed by the strict rules of a judicial inquiry any more than it could expect the legislature, in considering proposed legislation, to be limited solely to a consideration of testimony adduced at a public hearing on the bill.

This court has repeatedly recognized that the legislature has the power to delegate to an administrative board broad power in the "working out of details under a legislative act," provided that the power delegated be properly restricted so that it constitutes merely " '[filling] up the details' after the legislature has laid down 'an intelligible and complete declaration of policy which is definite in describing the subject to which it relates or to the field wherein it shall apply.' " Miller v. Schuster, 227 Iowa 1005, 1017, 289 N. W. 702, 708, and cases cited therein.

The constitutionality of the grant of power to appellant commission herein, to determine the question of public convenience and necessity, is not challenged by appellee. The challenge is directed at the means employed to exercise such power and the question whether the power is administrative and legislative as distinguished from quasi-judicial power. The determination made by us in the Beasley case, that it is legislative in character because it requires the determination of future rights and duties based upon public convenience and necessity, as distinguished from the determination "of existing facts and resultant and controverted rights and duties, which is a judicial function", is fully supported by the decisions from this and other courts cited in support thereof as above quoted. The cases relied upon by the trial court and now urged upon us by the appellee are all cases involving determination of judicial questions. Accordingly, the cases are not in point.

Since the question to be decided by the appellant commission was administrative and legislative in character as distinguished from a judicial question, the legislature was not required to prescribe rules for the determination of such question confined within the strict limits of those applicable to a judicial inquiry. Accordingly, the provision in section 5100.17, that the commission "may hear testimony to aid it in determining the propriety of granting the application", does not mean that it must hear testimony and decide the question solely from such testimony. It did not act illegally in considering facts and information obtained from other sources.

Section 5100.21 provides for an appeal to the district court herein. Section 5100.23 provides that the appeal shall be submitted upon the transcript of the evidence and the record made before the commission and the district court shall either affirm or reverse the order of the commission. In the W., C. F. & N. Ry. Co. case, we state the scope of the review afforded by such appeal, at page 242 of 206 Iowa, page 312 of 220 N. W., thus:

"The question here involved has arisen in several outside jurisdictions. With rare exception, the holding in such cases

has been that the review intended was of questions of law only: such as, Did the commission act without or in excess of its jurisdiction? Is the order complained of without any support in the evidence? Was the action wholly arbitrary and unreasonable? Bluefield Tel. Co. v. Public Service Com., 102 W. Va. 296 (135 S. E. 833); State ex rel. United A. T. Co. v. Department of Pub. Works, 129 Wash. 5 (223 Pac. 1048); In re Application of Stolting, 131 Wash. 392 (230 Pac. 405); Minneapolis & St. L. R. Co. v. Railroad & Warehouse Com., 44 Minn. 336 (46 N. W. 559); Oregon-Washington R. & N. Co. v. Corey, 120 Ore. 517 (252 Pac. 955); Hammond Lbr. Co. v. Public Service Com., 96 Ore. 595 (189 Pac. 639); Norfolk & W. R. Co. v. Public Service Com., 82 W. Va. 408 (96 S. E. 62); People ex rel. Woodhaven G. L. Co. v. Public Serv. Com., 203 App. Div. 369 (196 N. Y. Supp. 623). * * *

"This conclusion is wholly consistent with the limited judgment the court may enter. If the finding and order of the commission was legal in all particulars, then it must be affirmed. If there were infirmities of jurisdiction or procedure, or other illegality, then it should be reversed."

Here the court determined that the order should be reversed because, in making the decision, there was infirmity in the procedure adopted in that the decision is based, in part at least, on evidence which the commission could not lawfully consider, because not developed at the hearing. As above stated, such holding was based upon an erroneous conception of the type of question being decided by the commission. The court erred in such holding.

The court further determined that the commission undertook to exercise equitable jurisdiction which it does not possess. This is based upon the language used by the commission in its order, to wit:

"The Commission has carefully studied the record in this case, has obtained facts and information outside the record which it has every reason to believe to be reliable and has given due consideration to the very unusual and peculiar circumstances involved in this application and in the acquisition case,

Docket No. H-2692. After having considered all of these matters, it feels there is but one *equitable* conclusion that can be reached. The Commission's opinion is that the applicant has shown that the proposed service will promote the public convenience and necessity. The application is, therefore, granted.'' (Italics supplied.)

We hold that the commission, in making its decision, that ''the proposed service will promote the public convenience and necessity'' was the ''one *equitable* conclusion that can be reached'', used the word ''equitable'' as meaning ''fair and just''. The New Century Dictionary defines the word ''equitable'' thus: ''Characterized by equity or fairness; according to the principles of equity; just and right; fair; reasonable; in *law,* of, pertaining to, or valid in equity, as distinguished from the common and statute law.'' We think it is clear that the commission used the word ''equitable'' as it is commonly defined and not in its technical legal meaning. In so doing, the commission did not exceed its powers. The court erred in holding that it did.

The Burlington Transportation Company seeks to justify the result reached below on grounds other than those selected by the trial court. We have carefully examined the record. We find that there is ample evidence to support the decision of the commission that the proposed service will promote the public convenience and necessity. The commission acted within its jurisdiction and powers. Its decision is not unreasonable or arbitrary and should have been affirmed.

The acquisition case, Docket No. H-2692, to which the commission refers in the portion of its decision above quoted, involved the acquisition by the appellee herein of the motor carrier freight lines of one Dave Redman in 1937. About 80 to 85 percent of Redman's route mileage substantially paralleled the rail lines of the C., B. & Q. Ry. Co., of which appellee corporation is a subsidiary. About 15 percent of the Redman mileage paralleled the rail lines of the C., R. I. & P. Ry. Co., of which the intervener appellant is a subsidiary. The Rock Island objected to the Burlington acquiring that portion of the Redman

Freight lines which would extend its operation to points beyond its own rails as being contrary to the policy established by the Interstate Commerce Commission and the public policy of the state of Iowa. The Burlington insisted on acquiring all of the Redman lines without restriction. The chairman of the commission, in announcing the decision, stated, ''The Commission has arrived at a decision here. The transfers are approved, as effective December 27, at 12:01 A. M., in accordance with the application, and without restriction, but this is not to be construed as a precedent governing the operation of one rail carrier in the territory exclusively served by another, and is subject to compliance with the insurance requirements on the part of the purchaser.'' The record of the proceedings in such acquisition case was introduced at the hearing herein.

Following the decision of that case, negotiations were had between appellee and intervener appellant relating to a possible sale by the Burlington of its motor freight mileage which paralleled the rail lines of the Rock Island. The negotiations were unsuccessful. Although the mileage involved herein all parallels rail lines of the Rock Island, the president of appellee stated, ''I am not sure that I will ever recommend to our people that we will ever let the Rock Island into Ottumwa, under any conditions.''

The proceedings herein were then commenced. In its decision herein the commission obviously took into consideration the situation created by the Burlington acquiring motor freight lines extending beyond its own rails and paralleling the rail lines of the Rock Island. There was also evidence that a motor freight line can be operated more effectively in conjunction with the rail lines that it parallels than can one that competes with such rail lines. The record, presented to us, is voluminous. It has been carefully considered. It would unduly prolong this opinion to attempt to review the facts in detail. We are satisfied that the evidence was sufficient to warrant the finding of the commission above quoted. The decision is not arbitrary or unreasonable. The commission had jurisdiction. Its proceedings were properly conducted. There is no basis for interference by the courts. In re Appeal of Beasley Bros., supra;

In re Application of W., C. F. & N. Ry. Co., supra; Campbell v. Eldridge, supra.

The decision of the district court is reversed.—Reversed.

BLISS, SAGER, STIGER, WENNERSTRUM, GARFIELD, MITCHELL, and OLIVER, JJ., concur.

HALE, C. J., takes no part.